UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

REC'D BY_____ D.C.

MAR 21 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

Case No. # 05-60022-CR-Dimitrouleas

---

Title 18 U.S.C. § 3582(c)(1)(A)(i),
U.S.S. Guideline § 1B1.13(b)(6), (6), (b)(5), and (6)(d).

---

Pre-se By:

Joniel Polynice
#57112-004

## TABLE OF CONTENTS

Page

Jurisdiction...........................................(iii)

Statement of the Case and Facts.........................(iv)

Argument One...........................................(2)

Conclusion.............................................(21)

Certificate of Service.................................(22)

## JURISDICTION

This Honorable Court has Jurisdiction to hear this case based on Title 28 U.S.C. § 3582(c)(1)(A)(i), United States sentencing guideline § 1B1.13 (b)(6), (6), (b)(5), and (6)(d),

## STATEMENT OF THE CASE AND FACTS

On February 1, 2005, Movant was indicted and charged with Conspiracy to possess with intent to distribute five (5) kilograms or more of cocaine, attempt possession with intent to distribute five (5) kilograms or more of cocaine, using a firearm in relation firearm in relation to a drug trafficking crime and possession of a firearm by a convicted felon.   A superceding indictment was returned on April 12, 2005, which added, as Count one, a Hobbs Act Conspiracy.   Count Four, still charged a § 924(c) violation, adding Hobbs Act Conspiracy to two drug trafficking predicate crimes.

On May 24, 2005, the government filed an 851 notice of intent to enhance.   The notice listed as predicate acts:   An August 1999, Aggravated Battery, an October 2001, possession of marijuana and a July 2002 fleeing and eluding and resisting arrest with violence.

At a joint trial on June 8, 2005, Movant was found guilty on all five charges.   As to all four defendents, the jury had been instructed only as to the two drug trafficking crimes being 924(c) predicates.

On September 16, 2005, Movant was sentenced to 420 months in a Federal United States Prison and declared a career offender, and enhanced and section 851.

Movant has exhausted all of his appeal remedies and now pursues this Title 18 U.S.C. § 3582(c)(1)(A)(i), U.S.S. Guideline § 1B1.13(b)(6), (6), (b)(5), and (6)(d).

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA


Joniel Polynice
    Movant,


-v-                     Case No. #:05-60022-CR-Dimitrouleas

United States of America
        Respondent.


Motion according to Title 18 U.S.C. § 3582(c)(1)(A)(i),
U.S.S. Guideline § 1B1.13(b)(6), (b)(5), (6), and (6)(d),
Based on U.S.S. Guideline Amendment 814.

---

COMES NOW, Movant files this motion pro-se.  Movant is
a layman of the law, unskilled in in the law, and therefore
request that this motion be construed liberally.  Haines -v-
Kerner, 404 U.S. 519 (1972).


Movant states the following Argument in this motion:

## ARGUMENT ONE

Whether Movant is eligible for Compassionate Release, based on Title 18 U.S.C. § 3582(c)(1)(A)(i), U.S.S. Guideline § 1B1.13(b)(6), (6), (b)(5), and (6)(d).

---

1)   According to U.S.S. Guideline § 1B1.13(6), Movant qualifies for a reduction in his sentence, based on his (19) nineteen years of incarceration.  Movant is serving a very unusually long sentence that meets the specified criteria.  Movant also meets U.S.S. Guideline § 1B1.13(6), as well , based on his unusually long sentence of incarceration.  From the day Title 18 U.S.C. § 3582(c)(1)(A) took affect, it has authorized the Sentencing Reform Act has authorized a district court to reduce a sentence for "Extraordinary and Compelling Reasons", so long as the reduction is consistent with applicable policy statements issued by the sentencing commission.  Id. § 3582(c)(1)(A), and to describe what should be considered extraordinary and compelling reasons for a sentencing reduction , including the criteria to be applied and a list of specific examples, "28 U.S.C. § 994(t) (originally codified as § 994(d).  The only limit was that rehabilitation alone could not be considered extraordinary and compelling.  Id.

2)   Movant's case involves a recurring pattern: A substantial disparity between the sentence that was imposed and the sentence that would not be imposed under the same circumstances.

"Temporal disparity", such a disparity usually results from a change in law, often statutory.  Some statutes make changes retroactive.  Others do not.  This case involves changes that Congress did not make retroactive changes affecting minimum mandatory sentences in drug cases.

3)   For a temporal disparity resulting from a nonretroactive change in the law, a 3582(c)(1)(A)(i) motion sometimes provides the only possibility for a sentence reduction, other than a Presidential commutation.  United States -v- Ruvalcaba, 26 F. 4th 14 (1st Cir. 2022) (holding it could); United States -v- McCoy, 981 F. 3d 271 (4th Cir. 2020) (same); United States -v- Chen, 48 F. 4th 1092 (9th Cir. 2022) (same); and United States -v- Maumau, 993 F.3d 821 (10th Cir. 2021) (same).

## U.S.S. Guideline § 1B1.13(b)(6),
### Unusually Long Sentence

If a defendant received an unusually long sentence and has served at least 10 yers of the term of imprisonment, a change in the law (other than amendment to the Guidelines Manual that has not been made retroactive) may be considered in dertermining whether the defendant presents an Extraordinary and Compelling reason, but only where such a change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed and after full consideration of the Defendant's individualized circumstances.

(3)

Therefore, a "Temporal Disparity" can, in unusual circumstances be an Extraordinary and Compelling reason for a sentence reduction. See Ruvalcaba, 26 F. 4th at 24-28; see also United States -v- Cutrell, No. 4:01-cr-11(N.D. Fla. Dec. 1, 2020).

"Extraordinary" is an adjective addressing matters of degree, not kind.  Sunsets occur everyday, but some are extraordinary.  Thousands of individuals have played in the National Basketball Association, hundreds have won championships or have been all-stars, dozens have been most valuable players. But, Bill Russel was extraordinary.  Nothing but the word "extraordinary" suggests it could not apply to an unusually long sentence or an unusually temporal disparity caused by an otherwise non-retroactive change in the law.  See Ruvalcaba, 26 F. 4th at 25-26.

The Honorable U.S. District Court Judge, Mr. Robert Hinkle, once recently stated: "Similarly, the need to correct an unjust, abnormally disparate sentence even if the in justice becomes clear only as our understanding of just sentences evolves or the more favorable treatmetn of similarly situated others becomes widespread law be 'compelling' See compelling Black's Law Dictionary (11th Ed. 2019) (defining this term to include a 'need so great that irreparable harm or injustice would result if it is not met')".

The notion that Congress evaluated finality over justice

(4)

in all instances cannot be squared with § 3582(c)(1)(A)(i),
the provision Congress adopted to allow relief in rare, but
existing circumstances.

When Congress choses not to make a change retroactive, it
means the change cannot be involved by every affected defendant.
It does nto repeal § 3582(c)(1)(A)(i) or prevent an affected
defendant whose circumstances are extraordinary and compelling
from invoking that provision.  See Ruvalcaba, 26 F. 4th at 27-
28.  Congress could rationally decide to change a statute by
changing the criteria for or length of minimum mandatory sentences,
for example, not to make that change a basis for a sentence
reduction in a typical case, while still allowing a reduction
in extraordinary and compelling circumstances.  And that is
precisely what Congress has done.  Congress has said
rehabilitation alone cannot be an Extraordinary and Compelling
reason for a sentence reduction, but Congress has imposed no
other limits on those terms.  Id. at 25-26.  Neither the
Sentencing Commission nor the Courts are obligated to read
into the Statute an exception Congress did not enact. Id. at
26.

The United States Sentencing Guidelines are not invalid.
See United States -v- LaBonte, ₿20 U.S. 751 (1997) (holding in
in a case not involving such a delegation, that a sentencing
guideline is invalid if contrary to the plain meaning of the
statute it implements).  The Commission did it's part by

(5)

adopting § 1B1.13(b)(6), which would survive scutiny under
LaBonte, and even more clearly survives scrutiny under
Batterton -v- Francis, 432 U.S. 416, 426 (1977).

Movant in this case was careered based on Aggravated Battery,
for a 1998 state of Florida case; Fleeing and Eluding, and
resisting arrest with violence, at state of Florida case, for
which the Movant cannot be enhanced to career offender status.
Salinas -v- United States, 547 U.S. 188 (2006).  Aggravated
Battery, Fleeing and Eluding, and resisting arrest with violence,
that were used to career the Movant.  If the Movant were
sentenced today, he would probably not receive the same sentence,
because Conspiracy to Hobb's Act is not a violent offense, Taylor
-v- United States, 142 S. Ct. 2015 (2022);  See also, Dupree
-v- United States, 57 F. 3d 1269 (2023) (11th Cir.).  Inchoate
crimes such as conspiracy nor attempt conspiracy can be used to
career the Movant, see Dupree, Supra.  No attempt can be used to
career the Movant either.  Taylor -v- United States, 142 S. Ct.
1817 (2021).  The Fleeing and Eluding has to be intentional,
the resisting arrest wiht violence has to have been deliberately
and intentional with specific intent and or specific conduct.
Movant's Fleeing and Eluding was without specific intent, and
without deliberate intentions and without deliberate conduct,
but was reckless and unintentional and not deliberate nor with
was Movant's actions deliberate, nor intentional with specific
conduct in regards to resisting arrest with violence.  Movant
had no intentions of causing anyone nor any others any violence.

(6)

However, he was given such a state of Florida prior for such a career offender enhancement. Borden -v- United States, supra, and Davis -v- United States, 139 S. Ct. 2391 (2019). None of Movant's state priors that he was enhanced for were intentional nor deliberate conduct nor with specific conduct in regards to any violence. Fleeing and Eluding accoridng to Davis -v- United States, 139 S. Ct. 2391 (2019), is not a crime of violence, see also Borden -v- United States, supra, see also United States -v- Dean, 137 S. Ct. 1170 (2017) based on Movant's consecutive 60 month sentence.

If the Movant were sentenced today, he would not be a career offender, serving 420 months in a Federal United States Prison, because of the above stated reasons. If Movant were sentenced today, no attempt to conspire could be used to enhance him to career offender status either. Because of Taylor -v- United States, supra, and no conspiracy could be used to enhance him to career offender status either, because of Dupree, supra. Movant would therefore, not be serving a 420 month sentence in a Federal United States Prison. But that is only if the Movant were sentenced today. Movant is serving a very large and gross disparity of a sentence compared to those being sentenced today. Plus Hobbs Act conspiracy is no longer a violent offense either, according to Taylor -v- United States, supra, because it is not a violent offense nor an eligible offense for career offender enhancement.

(7)

Movant's simple possession definetly cannot apply nor is it eligible for career offender enhancement purposes because it is not a serious drug offense, and he did not serve over a year in prison.  If the Movant were sentenced today, not even his state of Florida Marijuana charge could be used to career him.  Today, Movant would not be a career offender based on all of the above stated reasons, with such a draconian and gross disapropriate disparity of such a large sentence as 420 months.  Movant would not even be in a category six at all but a lesser category based on the above stated reasons in this motion.

Movant asks this Honorable Court can or will it at least consider a reduction in his sentence, based on U.S.S. Guideline § 1B1.13(b)(5) "Other Reasons", in the event it decides not to under § 1B1.13(b)(6) and (6).

If the Movant were sentenced today, he could receive a lesser sentence, based on a COVID-19, because the virus is coming back and it is spreading through the Federal system rapidly.  Your Honor, and the Coleman Prison's medical staff is in-adequate and insufficient based on their medical assistance to inmates.  They never hardly ever call you to medical when you complain to them about your medical problems such as recently about the spread of COVID-19.  The medical department will not give you anything for your systems, because they claim they don't see any or can't find any symptoms that your suffering from.

(8)

Many inmates are getting sick all over again with no medical assistance. The nurses have a habit of prescribing the wrong medication to inmates that should not be receiving that medication. The medical department has a habit of telling you nothing is wrong with you medically and then within a few hours, your deceased from lack of medical attention or they tell you to go back to your unit, because they say nothing is wroing with you and suddenly your being rushed to the hospital because Coleman medical was inadequate with their medical care. They simply do not care Your Honor, because there is so many inmates they have to care for. These are medical Extraordinary and Compelling reasons for a U.S.S. Guideline § 1B1.13(b)(5) request for compassionate release.

Concepcion -v- United States, 142 S. Ct. 2389 (2022), states that the only limitations on a Court's discretion to consider any relevant materials to an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution. Id., at 8-9. And nothing in the text and structure of the First Step Act expressly, or even implicitly, overcomes the established tradition of the Court's sentencing discretion. Id., at *9.

U.S.S. Guideline § 1B1.13(5),
"Other Reasons" For Relief

Movant argues that pursuant to the First Step Act and Compassionate
Release Act, district judges have granted release to defendants
convicted of murders with mandatory LIFE sentences. See U.S. -V-
Perez, 2021 U.S. Dist. LEXIS 41040 at 9-10 (D. Conn. 2021)
(granting compassionate release to a defendant that served 23 years
of incarceration and was sentenced to a mandatory LIFE sentence
pursuant to 18 U.S.C. § 1958). The Perez Court also held,
"[B]ecause [defendant's] sentence was mandatory, this Court's
first opportunity to functionally weigh the 3553(a) factors in his
case", was after filing his compassionate release motion. ID; See
also U.S. -V- Somerville, 463 F. Supp. 3d. 855, 888-89 (WDPA 2020)
(finding that the mandatory minimum sentence imposed by the Armed
Career Criminal Act precluded the Court from considering the defen-
dant's substantial mitigating circumstances, and those factors
weighed in favor of compassionate release given the nature of his
offense, his eight years of incarceration, his substantial rehabili-
tation, and his difficult upbringing).

The Defendant was sentence to 420 months for conspiracy to distri-
bute and possess with intent to distribute five or more kilograms
of cocaine along with conspiracy to launder monetary instruments.
While his crimes involved cocaine & conspiracy to launder monetary

(10)

instruments, that does not bar the Court from granting him relief under the First Step Act or the Compassionate Release Act. See, U.S. -V- Rodriguez, 492 F. Supp. 3d. 306 (SDNY 2020) (granting compassionate release to a prisoner serving a mandatory LIFE sentence without the possibility of parole for the murder of a government informant); see also U.S. -V- Gluzman, 2020 U.S. Dist. LEXIS 131749 (SD NY 2020) (granting compassionate release to a defendant convicted of premeditated murder of her spouse and sentenced to mandatory LIFE sentence) ; U.S. -V- Rios, 2020 U.S. Dist. LEXIS 230074 (D. Conn. 2020) (granting compassionate release to a defendant convicted of VICAR (Violent RICO) murder, and sentenced to LIFE); U.S. -V- Tidwell, 476 F. 3d. 66 (ED Pa. 2020) (granting compassionate release to a defendant sentenced to LIFE for murder in furtherance of a continuing criminal enterprise).

Therefore, this Court has the authority to reduce Movant's sentence.

---

## This Court Can Grant Relief After Balancing The Sentencing Factors Set Forth In 18 U.S.C. § 3553(a).

---

This Court has authority to grant Movant's request for a sentence reduction after balancing the sentencing factors set forth in 18 U.S.C. § 3553(a). Several Courts have used these factors to reduce defendant's LIFE sentences and otherwise mandatory sentences.

The Courts considered the national average for Federal murder to be around 22 years. A majority of the Courts agreed that a sentence for 25 years for murder was sufficient but not greater than necessary and promoted respect for the law.

---

### District Courts Have Reduced Defendant's Convicted Of Murder And Sentenced To LIFE After Balancing The § 3553(a) Factors

---

As argued above, Movant argues that the § 3553(a) factors warrant a reduction in his sentence. Several district courts have granted compassionate release to defendants with LIFE sentences, after carefully balancing the § 3553(a) factors.

The Rodriguez Court held:

"As discussed above, [defendant] seeks his immediate release-that is, a sentence reduction to time served. After considering § 3553(a) factors, however, the Court finds that such an extreme reduction would not reflect the seriousness of or provide just punishment for his egregious participation in the brutal murder of a government informant. Nevertheless, the Court concludes that a more modest sentence reduction to a term of 30 years imprisonment, is both warranted by the above described, extraordinary and compelling circumstances and appropriate in light of § 3553(a) factors."

(12)

492 F. Supp. 3d. at 313

The Rodriguez Court further noted "[a] 30-year sentence, that is a sentence 50% greater than the average federal murder sentence, reflects the fact the defendant's crimes were hardly ordinary and deserve substantial punishment." Id. at 316; see also Id. ("This lengthy time is also a period of time that promotes respect for the law and provides just punishment for his offenses, even where the defendant was originally sentenced to life imprisonment"). Several other district courts have considered a defendant's under-lying conduct pertaining to their murder convictions but decided to reduce their sentence in light of § 3553(a). See U.S. -V- Regas, 2020 U.S. Dist. LEXIS 98402 at 10 (CD Cal. 2020) (granting compa-ssionate release to a defendant that served 27 years in prison on a LIFE sentence for operating a continuing criminal enterprise and holding, "While the court agrees that the nature and circumstances of defendant's underlying offense are serious, evidence of defend-ant's post-sentencing rehabilitation, favors a sentence reduction"); see also U.S. -V- Parker, 461 F. Supp. 3d. 966, 982 (CD Cal. 2020) (granting release to a corrupt officer that served 22 years on a LIFE sentence for operating a continual criminal enterprise. The Court noted "[W]ith respect to the § 3553(a)(3), incarceration, is not the only kind of sentence available. To the contrary, noncusto-dial sentences also curtail prized liberty interests and defendant always faces harsh consequences that wait if he violates the condi-tions attached to such sentence."); U.S. -V- Tidwell, 476 F. Supp. 3d. 66, 70 (ED Pa. 2020) (granting compassionate release to a defendant that served 26 years on a LIFE sentence for operating a continual enterprise, that included murder. The court held, "The

(13)

government asserts that based on [defendant's] status as a 'violent drug offender', his continued incarceration is necessary. The Court disagrees. The [defendant] is terminally ill, has already served over 25 years in federal custody, and this 25 year duration has consumed a large part of his life, and by measure represents a very substantial punishment that reflects the seriousness of his offense and the need for general or specific deterrence.')

---

### The First Step Act Gives District Courts Authority To Consider The Defendant's Mitigating Factors That Warrant A Reduction

---

Once again, in the First Step Act era, district court judges are permitted to consider the Defendants mitigating arguements in support of his sentencing reduction. At his original sentencing hearing, the court was bound by the guidelines, and it prohibited the court from considering any mitigating arguments that he presented. He pled guilty, accepted responsibility, and the only thing left to do was pronounce his sentence. The sentencing court was not obligated, as current district courts are now, to "make an individualized assessment based on the facts presented and impose a sentence sufficient but not greater than necessary, to satisfy the purposes of criminal law." Gall -V- U.S., 552 U.S. 38, 50 (2007). Nor is there any reasons to believe that the sentence then imposed, refected a determination by the Court that 35 years was require to vindicate the

(14)

purposes of criminal law. U.S. -V- Gluzman, 2020. U.S. Dist.
LEXIS 131749 at 61-62 (SD NY 2020).

The Gluzman Court considered the exact argument, and granted
compassionate release to a woman that was convicted of the pre-
meditaded murder of her husband. See Gluzman, 131749 at 61-62
("Consistent with that, [Defendant] was served 24 years of her
life in a Federal penitentiary. Such a lengthy period of time
reflects the seriousness of the offense, promotes respect for
the law, and provided just punishment for the offense. It also
affords adequate deterrence to criminal conduct. As noted above,
it also served to protect the public from further crimes [Defen-
dant] (to the point where she no longer presents a safety risk),
and it provides Defendant with significant opportunities for
educational and character growth opportunities, that she has
seized.")

Several courts have noted that the national guidelines range for
Federal murder is around 22 years, and in most State Courts, a
defendant will be paroled on a murder after serving around 13 to
15  years. See U.S. -V- Cruz, 2021 U.S. Dist. LEXIS 68857 at 18
(D. Conn. 2020) (granting compassionate release and observing
that defendant was now 45 years old and had been incarcerated
since he was 18 years old, which to 60% of his life in prison.
The Court noted "this as an unusually long sentence is further
supported by the fact that the national average sentence for
murder, [was] 22 years"); see also Gluzman, 131749 at 61-62
(comparing the length of sentences for federal murder and murder

committed in the State of New York.)

---

**Several District Courts Have Granted Compassionate
Release To Defendants Convicted Of RICO And
Firearm Charges**

---

Numerous district courts have granted compassionate release to
Defendants that were convicted of RICO, acts of violence, distri-
bution of drugs, and firearm offenses. See U.S. -V- Miller, 2022
U.S. Dist. LEXIS 25678 (ED Ws. Feb. 14,2022) (granting compass-
ionate release to a defendant sentenced to two LIFE sentences plus
two 20 year sentences). The Miller Court alas held the Defendant's
RICO convictions were based on "twelve proven racketeering acts,
including three murders, various attempt murder, conspiracies to
commit murder of rival bikers, robbery and assault of rival biker
club members, and associates, cocaine and hydrocodone trafficking,
and dealings counterfeit U.S. currency. The criminal activity
occured during and as part as a violent gang war with rival motor-
cycle gangs over territory. 'Id.

At trial Miller was "proven to be among the most violent of the
charged defendants... was found to have cause the killing of
[victim], was shot in the head with a .22 caliber pistol. The
murder occurred because of a load of marijuana. The other murder-
ous instances involved stabbing and beating." Id. at 18.

(16)

Finally, the Miller Court noted that his list of convictions includes, "various other failed attempts to end the lives of those who posed a threat to his criminal enterprise and those unassuming citizens who got in their way. The severity of [Defendant's] crimes overwhelmed the analysis in this case. Defendant was among the most violent of the [gang] who engaged in an extensive gang war that was fueled by a jealous rivalry executed with firearms and explosives." Id at 19.

In another case, a district court granted compassionate release to similarly situated defendant held;

"To be clear, this is not a case where someone was wrongfully accused and convicted. Nor does it involve an unfair sentence. Defendant was part of a violent street gang that distributed drugs, shot people, intimidated citizens, and tried to bribe a juror. They went to trial and showed no remorse. Normally that would be the end of the matter, but the changes to the law allow this Court to review the motion for compassionate release. However, granting relief today in no way criticizes the original prosecution and sentencing."

U.S. -V- Davis, 2021 U.S. Dist. LEXIS 103081 at 2 (WDNC 2021); see also Id. at 2-3 (The defendant "participated in a highly disciplined and violent drug trafficking organization, the members sold crack cocaine, use [and] carried assault rifles, shotguns, Uzi, destructive devices, developed a reputation for violence, on two occasions during the defendant's participation in the conspiracy, he and some of his co-defendants used and carried firearms.")

In Curry, the district court granted compassionate release to a

(17)

defendant serving a LIFE sentence for distributing crack cocaine,
powder cocaine, marijuana, being a felon in possession of a firearm
during a drug trafficking crime. U.S. -V- Curry, 2021 U.S. Dist.
LEXIS 122812 at 12-13 (MD NC 2021). The Curry court noted that his
"present offense was serious and repetitive, both times he was re-
leased on bond, and re-engaged in his drug trafficking, his pattern
of criminal conduct, notably, his continued activity that was ongoing
while released on bond and despite two prior arrest, at the time of
his arrest, the fact that he attempted to escape from custody after
his jury verdict in this case." Id.

In Banks, the district court granted compassionate release to a
defendant deemed as a career offender, that pled guilty to distri-
buting crack cocaine, given a two-point enhancement for possessing
a firearm during a drug transaction, and another two levels for
obstruciton of justice because, "he recklessly created a substan-
tial risk of death or serious bodily injury to another person."
U.S. -V- Banks, 2022 U.S. Dist. LEXIS 13787 at 2-3 WD VA. 2022).
In Bass, the district court granted compassionate release to a
defendant serving a lIFE sentence conviction of conspiracy to
distribute 5 kilograms of cocaine, 50 grams of crack, using a fire-
arm to commit murder in furtherance of a drug trafficking crime.
U.S. -V- Bass, (2021) U.S. Dist. LEXIS 11719 at 2-3 (ED Mich. 2021);
see also Id. at 13 ("There is no question that [Defendant's]
offenses were horrific, for years, [Defendant's organization]
inflicted harm on its own members and members of the community
alike.") U.S. -V- McClellan, 2020, U.S. Dist. LEXIS 97136 at 2-3
(ND Ohio 2020) (granting compassionate release to a defendant

sentence to LIFE, plus 25 years (consecutive). The defendant was
a career offender convicted of distributing cocaine, crack cocaine,
being a felon in possession of a firearm, and using a firearm during
a drug trafficking crime, and conspiracy to assault with a dangerous
weapon); U.S. -V- Williams, 2020 U.S. Dist. LEXIS (D. Minn. 2020)
(granting compassionate release to a defendant serving 300 months
sentence for possession with the intent to distribute crack, conspi-
racy to distribute cocaine, and possession of a firearm during a
drug trafficking crime.) U.S. -V- Olivaries, 2020 U.S. Dist. LEXIS
91535 (D. SD 2020) (granting sentencing reduction to a defendant
sentenced to LIFE, despite his classification as a career offender
and conviction for distributing crack); U.S. -V- Jenkins, 460 F.
Supp. 3d. 1121 (D. Colo 2020) (granting compassionate release to
defendant convicted of conspiracy to distribute crack cocaine and
possessing a firearm during a drug trafficking offense.)
U.S. -V- Lewis, 2020 U.S. Dist. LEXIS 156842 at 2-3 (WD Wash.2020)
(granting compassionate release to a defendant convicted of posse-
ssion of a firearm, and deemed an Armed Career Criminal.)

Several other courts have granted relief to similarly situated
defendants. See U.S. -V- Under wood, 2021 U.S. Dist. LEXIS 8378
at 2-3 (SDNY 2021) (granting compassionate release to a defendant
convicted of RICO. He was sentenced to 3 LIFE sentences. The Court
noted that he was a "cold blooded murder"); See also U.S. -V- Banks,
2022 U.S. Dist. LEXIS 65177 (D. Md. 2022) (granting compassionate
release to a defendant convicted of RICO involving crack and re-
ducing his sentence from 262 months to 188 months); U.S. -V- Ball,
2021 U.S. Dist. LEXIS 107594 at 15-16 (ED Mich. 2021) (granting

(19)

compassionate release to a defendant convicted of RICO involving
conspiracy to commit murder. He was sentenced to 360 months, but
the Court reduced his sentence to 240 months. The Court noted that
his crimes were "serious, he was a leader in the organization,
extensive criminal enterprise that involved massive amounts of
drugs and interstate theft weighed against his release."); U.S. -V-
Johnson, 2021 U.S. Dist. LEXIS 209833 at 1-3 (ND Cal. 202)
(granting  compassionate release to a defendant that pled guilty
to committing a "conspiracy to commit murder, conspiracy to distri-
bute crack and marijuana, and conspiracy to commit other crimes
that was done in the furtherance of a gang and in light of his
position in the gang. "His sentence was reduced from 23 years to
16 years); U.S. -V- Danson, 2020 U.S. Dist. LEXIS 112138 at 4-5
(D. DC. 2020) (granting compassionate release to a defendant that
pled guilty to a RICO charge. He was part of an enterprise that
trafficked in "PCP, heroin, cocaine, cocaine base, and marijuana."
After serving 122 months, his 192 month sentence was reduced to
time served. He was 35 years old). Therefore, this Court has
authority to grant the Movant's request for a sentence reduction.


U.S.S. Guideline § (6)(d),
Rehabilitational Progress
─────────────────────────────


   Enclosed is Exhibit "A", the Movant's rehabilitational
progress and how he has changed while being incarcerated from
the person he was 19 years ago into a very positive and productive
inmate.  Movant has taken advantage of all the necessary and
                         (20)

available programs to him.  Movant also teaches classes on cultures and helps assist other Federal Prisoners in their writing and reading.  See letters from other prison inmates as proof of the Movant's progress while being incarcerated. Movant is no threat to the public nor to the community. Movant has changed his negative behavior from 19 years ago into positive and constructive behavior, by programming and becoming a positive force with positive and constructive change in his life and into that of others.  Movant is no longer of the past characteristics and criminal history of a person that he was over 19 years ago.  Movant has changed through rehabilitating programs, and if and when released Movant will be a more productive member of society.  Movant is not a danger to anyone nor to the community.

### CONCLUSION

Movant hopes and prays for Compassionate Release, based on all of the above stated reasons in this motion.

Respectfully,

Dated: 3-14 - 2024

Joniel Polynice
# B7112-004

(21)

## CERTIFICATE OF SERVICE

I verify under the penalty of perjury, pursuant to 28 U.S.C. §

1746, that a copy of this filing was handed to prison officials for mail,

with prepaid first class postage attached, to the following:

CLERK OF COURT
U.S. DIST. COURT FOR
SOUTHERN DIST. OF FLA
299 E BROWARD BLVD RM 108
Ft. LAUD. FLA 33301

3-14 - 2024
Date

Signature: _____
Printed Name: Joniel Polynice
Reg. No. # 57112-004
Facility Name: FCI Coleman Medium
Address: P.O. Box 1032
City, State ZIP: Coleman, FL 33521

(22)

```
 COMHA  606.00  *       MALE CUSTODY CLASSIFICATION FORM       *        01-23-2023
PAGE 001 OF 001                                                         09:52:12
                              (A) IDENTIFYING DATA
REG NO..: 57112-004              FORM DATE: 04-05-2022           ORG: COM
NAME....: POLYNICE, JONIEL
                                      MGTV: NONE
PUB SFTY: GRT SVRTY,ALIEN,SENT LGTH   MVED:
                              (B) BASE SCORING
DETAINER: (0) NONE              SEVERITY.......: (7) GREATEST
MOS REL.: 152                   CRIM HIST SCORE: (06) 8 POINTS
ESCAPES.: (1) > 10 YRS MINOR    VIOLENCE.......: (2) > 15 YRS SERIOUS
VOL SURR: (0) N/A               AGE CATEGORY...: (2) 36 THROUGH 54
EDUC LEV: (0) VERFD HS DEGREE/GED DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS
                              (C) CUSTODY SCORING
TIME SERVED.....: (4) 26-75%    PROG PARTICIPAT: (1) AVERAGE
LIVING SKILLS...: (2) GOOD      TYPE DISCIP RPT: (0) GREATEST
FREQ DISCIP RPT.: (3) NONE      FAMILY/COMMUN..: (4) GOOD


                      --- LEVEL AND CUSTODY SUMMARY ---
BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
+18  +14   +1        +19        MEDIUM      N/A              IN     INCREASE



G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```



## Individualized Needs Plan - Program Review   (Inmate Copy)

**SEQUENCE:** 01258430
**Team Date:** 01-31-2023

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: POLYNICE, JONIEL  57112-004

| | | |
|---|---|---|
| Facility: | COM  COLEMAN MED FCI | Proj. Rel. Date: 12-13-2034 |
| Name: | POLYNICE, JONIEL | Proj. Rel. Mthd: GOOD CONDUCT TIME |
| Register No.: | **57112-004** | DNA Status: COP01054 / 05-05-2010 |
| Age: | 43 | |
| Date of Birth: | 06-26-1979 | |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| ICE | INVESTIGATION FOR DEPORTATION (HAITI) |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| COM | COOK AM | F/S COOK AM DETAIL | 11-21-2019 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| COM | ESL HAS | ENGLISH PROFICIENT | 10-18-2005 |
| COM | GED EARNED | GED EARNED IN BOP | 09-21-2006 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| COM | C | FOOTBALL SPORTS RULES | 09-13-2019 | 09-16-2019 |
| COM | C | ACE SELF IMPROVEMENT CLASS | 04-05-2019 | 07-16-2019 |
| COM | C | BEGINNING AEROBICS | 11-02-2018 | 01-01-2019 |
| COM | C | BEGINNING CALISTHENICS | 11-02-2018 | 01-01-2019 |
| COM | C | FOOTBALL SPORTS RULES | 08-26-2018 | 09-02-2018 |
| COM | C | RE-ENTRY SEMINAR | 11-30-2016 | 11-30-2016 |
| COM | C | PERSONAL MASTERY | 10-17-2016 | 10-17-2016 |
| COM | C | RPP HEALTH/NUTRITION #1 | 07-06-2016 | 07-06-2016 |
| COP | C | PERSONAL GROWTH | 11-20-2015 | 03-23-2016 |
| COP | C | FINACIAL MANG RPP CLASS | 06-09-2014 | 10-01-2014 |
| COP | C | FIELS MAINTENANCE CLASS | 12-19-2012 | 02-25-2013 |
| COP | C | INTRO TO CREOLE (ACE CLASS) | 06-14-2012 | 10-04-2012 |
| COP | C | FIELS MAINTENANCE CLASS | 05-28-2012 | 05-28-2012 |
| COP | C | ANCIENT AFRICAN CIVILIZ (ACE) | 03-11-2010 | 06-11-2010 |
| COP | C | PSY SERVICES ANGER MGMT | 03-21-2008 | 03-21-2008 |
| COP | C | MICROSOFT OFFICE AM | 07-23-2007 | 09-07-2007 |
| COP | C | GED ROOM4,0930-1100 M-F | 08-21-2006 | 09-21-2006 |
| COP | C | ELECTRONIC LAW LIB TRAINING | 06-01-2006 | 06-01-2006 |
| COP | C | ACE LEGAL RESEARCH | 01-09-2006 | 05-08-2006 |
| COP | C | ACE REAL ESTATE - TUES/THURS | 12-14-2005 | 02-22-2006 |
| COP | C | ADVANCE BIKE SPIN | 10-12-2005 | 12-02-2005 |
| COP | C | RPP5 RELEASE REQUIREMENT CLASS | 10-06-2005 | 10-06-2005 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

*** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ***

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 09-16-2005 |
| CARE1-MH | CARE1-MENTAL HEALTH | 07-22-2010 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| REG DUTY | NO MEDICAL RESTR–REGULAR DUTY | 10-12-2005 |
| YES F/S | CLEARED FOR FOOD SERVICE | 03-12-2009 |

### Current Drug Assignments

# C04-098U

DATE REVIEWED:  <u>January 8, 2020</u>

INSTITUTION:      COM _____      UNIT:        C-2 _____

INMATE NAME:    POLYNICE, JONIEL      REG NO:     57112-004 _____

FIRST STEP ACT (Circle One):          ~~ELIGIBLE~~  /        INELIGIBLE

RECIDIVISM RISK LEVEL (Circle One):            MINIMUM   LOW  MEDIUM   HIGH

JONIEL POLYNICE # 57112-004
FEDERAL CORRECTIONAL COMPLEX
Coleman MEDIUM
P. O. BOX 1032
Coleman FLA 33521



**UNITED STATES POSTAL SERVICE.**   *Retail*

**P**   US POSTAGE PAID
**$0.00**   Origin: 33521
03/18/24
1117550512-02

**PRIORITY MAIL®**

0 Lb 10.30 Oz
**RDC 03**

EXPECTED DELIVERY DAY:  03/20/24

C019

SHIP
TO:
STE 108
299 E BROWARD BLVD
FORT LAUDERDALE FL 33301-1922

**USPS TRACKING® #**

9505 5126 3317 4078 2914 17

ATTN: Honorable W. P. D
CLERK OF COURT FO
The U.S. DISTRICT COURT
Southern DISTRICT Of FL
299 E. BROWARD BL
Ft. LAUD. FLA 33