UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 05-cr-60022-DIMITROULEAS

UNITED STATES OF AMERICA

v.

JONIEL POLYNICE,

    Defendant.
_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO JONIEL POLYNICE'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files its response in opposition to defendant Joniel Polynice's ("the defendant") Motion to Reduce Sentence (DE 501).

**COURSE OF PROCEEDINGS IN THE CRIMINAL CASE**

On June 8, 2005, following a jury trial, the defendant was convicted of Counts One through Five of a five-count Superseding Indictment (DE 168). Count One charged conspiracy to obstruct, delay or affect commerce by means of robbery, in violation of Title 18, United States Code, § 1951(a). Count Two charged conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of Title 21, United States Code, § 846. Count Three charged attempt to possess with intent to distribute five or more kilograms of cocaine, in violation of Title 21, United States Code, § 841. Count Four charged possession of a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, § 924(c)(1)(A). Count Five charged possession of a firearm by a convicted felon, in violation of Title 18, United States Code, § 922(g)(1).

1

As to Count One, the term of imprisonment was 0 to 20 years; as to each of Counts Two and Three, the minimum term of imprisonment was 10 years, and the maximum term was life; as to Count Four, a term of imprisonment of 5 years must run consecutive to any other term of imprisonment; and as to Count Five, the term of imprisonment was 0 to 10 years.

At sentencing, the defendant was deemed a career offender under the then-mandatory sentencing guidelines on the basis of two prior convictions: (1) a 2002 Florida conviction for aggravated fleeing/eluding a law enforcement officer (02-11390CF); and (2) a 2004 Florida conviction for resisting officer with violence (04-4830CF) (PSR 48).

The defendant's guideline range without the career-offender enhancement would have been 278 to 322 months in prison, based on an offense level of 34 and a criminal history category IV (PSR 47, 60). With the career-offender enhancement, his guidelines range increased to 420 months to life in prison, based on an offense level of 37 and a criminal history category VI (PSR 99, 100). The Court sentenced him to 420 months in prison, followed by five years of supervised release (DE 259).

The defendant appealed his conviction [DE 274] and on April 11, 2007, the Eleventh Circuit Court of Appeals affirmed the Judgment and Sentence [DE 329]. *United States v. Orisnord*, 483 F. 3d 1169 (11th Cir. 2007). The Court held that felony fleeing and eluding, in violation of F.S. § 316.1935(3) is a crime of violence for purposes of the career offender enhancement under U.S.S.G. § 4B1.2. Id. at 1183.[1] On November 26, 2007, the United States Supreme Court denied certiorari. *Polynice v. United States,* 128 S. Ct. 673 (2007).

The defendant filed his first motion under 28 U.S.C. § 2255 on December 2, 2008, claiming, among other things, that he should not have been classified as a career offender (DE

---

[1] The Eleventh Circuit has since decided *Tribue v. United States,* 929 F.3d 1326, 1330 n.4 (11th Cir. 2019) (prior Florida conviction for fleeing and eluding does not qualify as a predicate violent felony under the ACCA).

363). The Court denied the defendant's motion stating in part, "even if fleeing and eluding were no longer held to be a crime of violence, it certainly was when Polynice's appeal was decided." [DE 364] The defendant has challenged his career offender designation on several more occasions utilizing 28 U.S.C. § 2255.

On June 24, 2016, the defendant filed his second Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 again arguing his career offender designation [DE 418]. On July 11, 2016, the Court denied the defendant's motion based on *Matchett v. United States,* 802 F. 3d 1185, 1193-97 (11th Cir. 2015) [DE 423].

On April 28, 2020, the 11th Circuit Court of Appeals granted leave for the defendant to file a successive Motion to Vacate under 28 U.S.C. § 2255 [DE 434]. The defendant's third 28 U.S.C. § 2255 motion was denied by the Court stating, in part, "This Court lacks jurisdiction to consider Polynice's challenge to his career offender classification, as the Eleventh Circuit did not grant permission to file a successive petition on that issue." [DE 443]

On October 13, 2020, the defendant filed a Motion for Release to the Custody of Immigration and Customs Services for Deportation, essentially arguing for compassionate release based on health issues and the COVID 19 pandemic. [DE 449] The Court denied the motion stating in part, "Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court has considered the applicable factors in 18 U.S.C. § 3553(a) and the applicable Sentencing Guidelines Policy Statements…Assuming this Court has jurisdiction, the Court does not find that extraordinary and compelling reasons have been shown to warrant the Court's granting the requested relief." [DE 450]

On March 21, 2024, the defendant filed the instant motion requesting relief principally based on the new "unusually long sentence" provision of the Guidelines, as well as extraordinary and compelling reasons again under Title 18 U.S.C. § 3582(c)(1)(A). [DE 501] The defendant

argues that his career offender designation is no longer valid in light of changes in the law, and that he is therefore serving an "unusually long sentence." [DE 501]. In other words, that, based on intervening judicial decisions, his career offender predicates are no longer valid. He also claims entitlement to relief due to medical circumstances stating, "If the Movant were sentenced today, he could receive a lesser sentence, based on COVID-19, because the virus is coming back and it is spreading through the Federal system rapidly." [DE 501:8).

The defendant is serving his sentence at Federal Correctional Complex, Coleman-Medium, in Coleman, Florida. He has two disciplinary infractions of note while in BOP custody; one for Possessing a Dangerous Weapon in 2013, and one for Possessing a Hazardous Tool (cell phone hidden behind the window frame in his cell) in 2023.

## ARGUMENT

To support his motion for a sentence reduction, the defendant invokes subsection (b)(6) of the policy statement, in which the Sentencing Commission purported to interpret § 3582(c)(1)(A)(i) to permit changes in law to establish "extraordinary and compelling" reasons for a sentence reduction in some circumstances. The defendant argues, among other things, that his rehabilitation, changes in the law, and the sentence he has already served qualify him for relief under the newly effective compassionate release amendments.

In short, the defendant is again challenging the validity of his career offender sentence. He has been challenging the career offender designation since it was first imposed. He did so first on direct appeal, followed by multiple 28 U.S.C. § 2255 petitions. As with the others, the defendant's latest attempt to challenge his career offender sentence should be denied.

Although Congress delegated broad authority to the Sentencing Commission, subsection (b)(6) is contrary to the statute's text, structure, and purpose, and therefore is invalid.

Section 3582(c)(1)(A) does not authorize sentence reductions based on changes in law, either alone or in combination with other factors.

Even if subsection (b)(6) were valid, the defendant has not established that the sentence he received is unusually long or grossly disparate to the sentence he might receive today. Additionally, as this Court has ruled in an earlier Judgment, the 18 U.S.C. § 3553(a) factors independently weigh against relief. [DE 450] Accordingly, this Court should deny the defendant's motion.

### A. Exhaustion of administrative remedies

Section 3582(c)(1)(A) requires a request for compassionate release to be presented first to BOP for its consideration; and only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal, may the defendant move for compassionate release in court. For purposes of this motion, the government agrees that the defendant has exhausted his administrative remedies.

### B. The Sentencing Commission and the new amendments to the Sentencing Guidelines

On April 5, 2023, the Sentencing Commission promulgated amendments to the Guidelines Manual, including to § 1B1.13's policy statement. The amendments to § 1B1.13 render the policy statement applicable to defendant-filed motions. As relevant here, the amendments allow the court to consider the length of a sentence when determining whether a defendant has presented an extraordinary and compelling reason for compassionate release. That change is reflected in new subsections (b)(6) and (c), which provide:

> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be

>imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.
>
>(c) LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; *see* U.S.S.G. § 1B1.13(b)(6), (c).

In § 3582(c)(1)(A)(i), Congress enacted a narrow exception to the general rule that a federal court "may not modify a term of imprisonment once it has been imposed," permitting a court to reduce a term of imprisonment where it finds that "extraordinary and compelling reasons" warrant a reduction. Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons," 28 U.S.C. § 994(t), but Congress's clear directive that any such reasons be both *extraordinary* and *compelling* necessarily limit the Commission's authority. Nonretroactive changes in sentencing law are neither. To the contrary, "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012).

### C. By its own Terms, Subsection (b)(6) does not apply to the defendant

As a threshold matter, because the defendant does not meet subsection (b)(6)'s criteria by its own terms, he could not establish extraordinary and compelling reasons for a sentence reduction based on a change in the Guidelines even if the Sentencing Commission acted within its statutory authority when promulgating that provision.

6

Section 3582(c)(1)(A) specifically instructs that any sentence reduction ordered by a court be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). An applicable policy statement is binding on the court, and the court therefore may not grant a sentence reduction outside of the circumstances the Commission has detailed in Section 1B1.13. *See Dillon*, 560 U.S. at 826–27 (interpreting identical language as used in Section 3582(c)(2)). In subsection (c) of the policy statement, moreover, the Commission specifically instructed that "[e]xcept as provided in subsection (b)(6), a change in the law . . . *shall not be considered* for purposes of determining whether an extraordinary and compelling reasons exists." U.S.S.G. § 1B1.13(c) (emphasis added). Because the defendant does not meet subsection (b)(6)'s criteria, he accordingly could not invoke that subsection in support of his sentence reduction motion, even assuming that it were valid.

Specifically, the defendant invokes intervening judicial decisions, which he contends establishes that his career offender predicates are no longer valid.[2] But in invoking those intervening judicial decisions, the defendant is not relying on a *change* in the law that was not (and could not have been) applicable at his sentencing, such as a subsequent decision by Congress to lower the applicable penalties for his offense. Instead, he seeks to challenge the validity of his judgment based on a judicial decision interpreting existing law in a manner that supports a claim of legal error that he did not previously recognize.

---

[2]  The defendant alternatively contends that the court may consider his claimed reasons for a sentence reduction under subsection (b)(5), which permits a court to find as extraordinary and compelling reasons for a sentence reduction "any other circumstance or combination of circumstances that . . . are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Subsection (b)(5) does not encompass changes in law, because it specifically references only reasons "similar" to those identified in subsections (1) through (4)—intentionally excluding subsection (6). *Id.* And, as explained, subsection (c) expressly excludes consideration of changes in law except as provided for in subsection (b)(6). *Id.* § 1B1.13(c).

Nothing in subsection (b)(6) authorizes courts to find that such a claimed error in the judgment establishes an extraordinary and compelling reason for a sentence reduction under Section 3582(c)(1)(A)(i). *See* U.S.S.G. § 1B1.13(b)(6); *see also United States v. Wesley*, 78 F.4th 1221, 1222 (10th Cir. 2023) (Tymkovich, J., concurring in denial of rehearing en banc) (explaining that "the Sentencing Commission's forthcoming amended policy statement . . . contains not a word about errors in a conviction or sentence as a basis for compassionate release"). For one thing, Congress has specified that the remedy for such claims of error lies through a direct appeal or a motion under 28 U.S.C. § 2255; indeed, Section 2255 is the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their sentences." *Jones v. Hendrix*, 599 U.S. 465, 473 (2023); *see Thacker*, 4 F.4th at 574 (explaining that Section 2255 provides the "principal path" that Congress has "established for federal prisoners to challenge their sentences" after they have become final); *see also Jenkins*, 50 F.4th at 1202–04. No reason exists to believe that Congress or the Commission intended to allow defendants to circumvent the limits on that well-established process—which "embody Congress' judgment regarding the central policy question of postconviction remedies[:] the appropriate balance between finality and error correction," *Jones*, 599 U.S. at 491—by affording alternative relief through the amended policy statement regarding compassionate release.

It would be especially inappropriate to interpret subsection (b)(6) to reach claimed errors in the judgment based on intervening judicial decisions because such decisions do not effect a "change" in the law at all. An intervening judicial interpretation of a statute—even one that disagrees with earlier interpretations—"[i]s not new law." *Fiore v. White*, 531 U.S. 225, 228 (2001) (per curiam). Instead, "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that

construction"; such a construction does not "'change[ ]'" the law but merely explains what a statute "*always* meant." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313–14 & n.12 (1994); *see also Fleming v. Fleming*, 264 U.S. 29, 31–32 (1924) ("The effect of [a] subsequent decision[] is not to make a new law, but only to hold that the law always meant what the court now says it means.").

Excluding challenges to the legal validity of a conviction or sentence based on intervening judicial decisions, moreover, is consistent with the substantial weight of authority in the courts of appeals. Nearly every circuit to have considered the question has held that a claimed error in a defendant's judgment cannot provide extraordinary and compelling reasons for a sentence reduction, and that a defendant cannot resort to Section 3582(c)(1)(A)(i) to circumvent the normal process of direct and collateral review. *See, e.g.*, *United States v. Amato*, 48 F.4th 61, 65 (2d Cir. 2022) (per curiam); *United States v. Henderson*, 858 F. App'x 466, 469 (3d Cir. 2021) (per curiam) (unpublished); *United States v. Ferguson*, 55 F.4th 262, 270-72 (4th Cir. 2022); *United States v. Escajeda*, 58 F.4th 184, 188 (5th Cir. 2023); *United States v. West*, 70 F.4th 341, 346–47 (6th Cir. 2023); *United States v. Martin*, 21 F.4th 944, 945–46 (7th Cir. 2021) (per curiam); *Crandall*, 25 F.4th at 586 (8th Cir.); *United States v. Wesley*, 60 F.4th 1277, 1283–86 (10th Cir. 2023); *Jenkins*, 50 F.4th at 1200–04 (D.C. Cir.); *see also United States v. Roper*, 72 F.4th 1097, 1102 (9th Cir. 2023) (noting issue, but explaining that the defendant there "does not claim that his original sentence violated the Constitution or federal law"). *But see United States v. Trenkler*, 47 F.4th 42, 47–49 (1st Cir. 2022).

**D. In exercising its authority, the Commission cannot act contrary to the statute**

The Sentencing Commission exceeded its congressionally delegated authority in promulgating subsection (b)(6). Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including

9

the criteria to be applied and a list of specific examples," but specifically noted that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Such a delegation of authority, however, "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011) (internal quotation marks omitted); *see Batterton*, 432 U.S. at 428. An agency cannot adopt an impermissible reading of the statute—*i.e.*, a reading that exceeds the gap left by Congress. *See Mayo Found.*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428.

The Sentencing Commission in particular "was not granted unbounded discretion," and as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997); *cf. Mistretta v. United States*, 488 U.S. 361, 379 (1989) (reasoning that the discretion vested in the Commission does not violate the nondelegation doctrine because the Sentencing Reform Act "sets forth more than merely an 'intelligible principle' or minimal standards" to guide that discretion). In the Sentencing Reform Act, itself, Congress directed the Commission to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). And Congress authorized the Commission only to "make *recommendations to Congress* concerning modification or enactment of statutes relating to sentencing." *Id.* § 995(a)(20) (emphasis added). The Sentencing Commission is without the authority to promulgate subsection (b)(6), which makes the section invalid.

Notably, at least one court in this district has found in the government's favor as to this issue. That court stated as follows:

10

> The Court agrees with the Government that U.S.S.G. section 1B1.13(b)(6), wherein the Sentencing Commission purported to interpret 18 U.S.C. section 3582(c)(1)(A)(i) to permit changes in law to establish "extraordinary and compelling" reasons for a sentence reduction in some circumstances, is contrary to the statute's text, structure, and purpose. (*See* Resp. 1–11). Defendant's "unusually-long-sentence" argument (*see* Mot. 4–8) is unavailing because section 3582(c)(1)(A) does not authorize sentence reductions based on changes in the law, either alone or in combination with other factors. (*See* Resp. 1–11).

*United States v. Williams*, Case No. 03-cr-20678-ALTONAGA, DE 906.

### E. Subsection (b)(6) conflicts with § 3582(c)(1)(A)'s plain text, context, and purpose

Section 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Congress plainly instructed that any reason sufficient to overcome that general principle must be "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). No reasonable interpretation of that phrase's text, particularly when considered in light of the statute's structure and purpose, can encompass nonretroactive or intervening changes in law. The Commission's interpretation of the statute as set forth in subsection (b)(6) is unreasonable and therefore invalid. *Mayo Found.*, 562 U.S. at 58; *see LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

#### 1. Plain text

To justify a sentence reduction under § 3582(c)(1)(A)(i), a proffered reason must be both "extraordinary" and "compelling." As a matter of plain language, an intervening change in the law is neither.[3]

---

[3] The majority of circuits to consider the question determined that a change in the law, whether considered alone or in combination with other factors, cannot constitute an "extraordinary and compelling" reason for a sentence reduction. *See United States v. Andrews*, 12 F.4th 255, 261

11

The defendant contends that in light of certain intervening judicial decisions, if he were sentenced today he would not qualify as a career offender. This is the same argument that the defendant has lodged numerous times before. But those intervening decisions do not establish a *change* in the law; rather, the defendant claims that it establishes an error that occurred at his sentence, which he claims is now apparent in light of the intervening decision. As explained above, that contention accordingly does not qualify as a "change in law" under subsection (b)(6).

But even if this Court construed the provision to encompass the application of an intervening decision that, as the defendant argues here, establishes an error in his now-final judgment, the Commission would exceed its statutory authority in identifying such a circumstance as "extraordinary and compelling." An intervening developing in sentencing law is neither an "extraordinary" nor a "compelling" reason for a sentence reduction under Section 3582(c)(1)(A)(i). Consistent with the "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute,'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018), the word "extraordinary" should be understood "to mean 'most unusual,' 'far from common,' and 'having little or no precedent,'" *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc) (quoting *Webster's Third New International Dictionary of the English Language* 807 (1971) (*Webster's*)). There is "nothing 'extraordinary' about new . . . caselaw, or a

---

(3d Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198–1200 (D.C. Cir. 2022); *see also United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) (unpublished).  Four circuits, in contrast, have taken the view that a change in the law can form part of an individualized assessment of whether to grant a sentence reduction, but only in combination with other case-specific factors. *Ruvalcaba*, 26 F.4th at 28; *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1097-98 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047–48 (10th Cir. 2021).

contention that the sentencing judge erred" in light of such case law, because such developments "are the ordinary business of the legal system." *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022); *see Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005) (observing that "[i]t is hardly extraordinary that subsequently, after petitioner's case was no longer pending, th[e Supreme] Court arrived at a different interpretation" of a federal statute).

An intervening development in sentencing law likewise cannot constitute a "compelling" reason for a sentence reduction. When Congress enacted the Sentencing Reform Act of 1984, "[c]ompelling" meant (and still means) "forcing, impelling, driving." *McCall*, 56 F.4th at 1055 (quoting *Webster's* 463). Thus, for a reason to be "compelling" under Section 3582(c)(1)(A)(i), it must provide a "powerful and convincing" reason to disturb the finality of a federal sentence. *Jenkins*, 50 F.4th at 1197 (internal quotation marks omitted). "But given the availability of direct appeal and collateral review under section 2255 of title 28," there is no powerful and convincing reason to allow prisoners to pursue claims of error under Section 3582(c)(1)(A)(i). *Id.* at 1200.

Accordingly, an intervening development in sentencing law cannot serve as an "extraordinary" or a "compelling" reason for a sentence reduction in isolation or as adding to a package of such "reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Whether considered alone or in combination with other asserted factors, an intervening development in sentencing law is a "legally impermissible" consideration for purposes of determining whether an extraordinary and compelling reason exists. *Jenkins*, 50 F.4th at 1202 (internal quotation marks omitted); *see United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations).

## 2. Context

Section 3582(c)(1)(A)(i)'s context further confirms that the term "extraordinary and compelling" cannot encompass intervening changes in law. "Statutory construction," moreover, "is a holistic endeavor" and a provision "is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988). Other features of the scheme confirm that the phrase "extraordinary and compelling reasons" does not encompass changes in law.

Most notably, in the very next paragraph of § 3582(c), Congress expressly addressed the retroactive application of some changes in law. In § 3582(c)(2), Congress authorized courts to modify a term of imprisonment where a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see* 28 U.S.C. § 994(u) (directing the Commission to determine when such modifications are appropriate). There would have been no reason for "the same Congress, skeptical of sentence modifications as a general rule," to have "provide[d] for the retroactive application of specific changes in sentencing law in § 3582(c)(2)" had Section 3582(c)(1)(A)(i) "already covered all legal developments, retroactive or not." *McCall*, 56 F.4th at 1056. That Congress did not similarly provide the Commission or district courts with authority to revisit sentences in light of statutory amendments or changes in decisional law suggests that Congress did not intend for § 3582(c)(1)(A) to reach such changes.

Reducing sentences based on intervening changes in the law also would undermine congressional design more generally because a motion brought pursuant to 28 U.S.C. § 2255 is the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their sentences." *Jones v. Hendrix*, 599 U.S. 465, 473 (2023); *see Thacker*, 4 F.4th at 574. (explaining

that § 2255 provides the "principal path" that Congress has "established for federal prisoners to challenge their sentences" after they have become final). Treating a nonretroactive change in the law as an "extraordinary and compelling" reason for a sentence reduction would allow defendants to "avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead." *Crandall*, 25 F.4th at 586. It "would wholly frustrate explicit congressional intent to hold that [defendants] could evade" those restrictions "by the simple expedient of putting a different label on their pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973). Congress surely "knew of its specific statutory scheme authorizing post-conviction relief" both "when it [enacted Section 3582(c)(1)(A)] in 1984 and amended it in 2018," and had "Congress intended the compassionate-release statute to act as an exception to this post-conviction framework, it would have made that intent specific." *McCall*, 56 F.4th at 1057-58 (internal quotation marks omitted).

3. **Purpose**

Recognizing intervening changes in law as extraordinary or compelling reasons for a sentence reduction under § 3582(c)(1)(A)(i) also would undermine a primary purpose of the Sentencing Reform Act, in which that provision was enacted. Through the Act, Congress sought to eliminate the "'unjustifi[ed]' and 'shameful' consequences" of a sentencing regime that produced "great variation among sentences imposed by different judges upon similarly situated offenders" and "uncertainty as to the time [an] offender would spend in prison." *Mistretta*, 488 U.S. at 366 (quoting S. Rep. No. 98-225, at 38, 65 (1983) (Senate Report)); *see also Neal*, 516 U.S. at 290–91 ("The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system"). "A primary goal" of the Act was "the elimination of unwarranted sentencing disparity." Senate Report at 52. In "overhaul[ing] federal sentencing

practices" by "abandon[ing] indeterminate sentencing and parole," Congress sought to "channel[] judges' discretion by establishing a framework to govern their consideration and imposition of sentence." *Tapia*, 564 U.S. at 325.

Consistent with Congress's goal of determinate sentencing, § 3582(c)(1)(A) was enacted as a narrow "safety valve" for "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances." Senate Report at 55, 121. Congress anticipated that such "justification[s] for reducing a term of imprisonment" would arise in a "relatively small number" of cases, and specifically identified severe or terminal illness as the archetype of "extraordinary and compelling circumstances" that would justify reducing a sentence. *Id.* at 55-56, 121.

Subsection (b)(6), however, purports to allow a district court to reduce a defendant's sentence when, in the judge's estimation, the defendant received "an unusually long sentence" that, accounting for nonretroactive changes in law, now represents a "gross disparity" from the sentence the court would likely impose today. U.S.S.G. § 1B1.13(b)(6). That authority is incompatible with the Sentencing Reform Act's overarching purpose and Congress's specific intent with respect to § 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied "notions of the purposes of sentencing." Senate Report at 38. Individual judges inevitably will have divergent views concerning the fairness of adhering to the ordinary practice of applying a change in law prospectively, whether a sentence lawfully imposed under the prior regime is "unusually long," and whether Congress's or the courts' assessment not to apply a change in law retroactively produces a "gross disparity," and what a "gross disparity" looks like. It is doubtful the Sentencing Reform Act "contained the[ ] seeds of its own destruction," *Jenkins*, 50 F.4th at 1202, and there is

no basis to think that, notwithstanding the Act's express purpose to eliminate parole in favor of determinative sentencing, Congress nevertheless created such "a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy," *Crandall*, 25 F.4th at 586.

### E. The Commission's interpretation of § 3582(c)(1)(A) as empowering courts to apply nonretroactive changes in law to particular defendants is in serious tension with basic separation-of-powers principles

In upholding the Sentencing Commission's constitutionality, the Supreme Court observed that the Commission is not vested with "the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta*, 488 U.S. at 396. "Congress generally cannot delegate its legislative power to another Branch," *id.* at 372, and "[w]hatever views may be entertained regarding severity of punishment, . . . these are peculiarly questions of legislative policy," *Gore v. United States*, 357 U.S. 386, 393 (1958). The Commission does not pose a nondelegation or separation-of-powers concern, the Court held, precisely because Congress delegated "nonadjudicatory functions that do not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388. Subsection (b)(6) contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis.

The separation-of-powers concern is particularly apparent when one considers the Commission's directive regarding *its own* retroactivity determinations. Section 3582(c)(2) permits a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" to move for a sentence reduction "consistent with applicable policy statements issued by the Sentencing Commission," and Sentencing Guidelines § 1B1.10 identifies particular Guidelines amendments that the Commission

has elected to make retroactive. *See* U.S.S.G. § 1B1.10(a), (d). In subsection (b)(6), the Commission expressly excluded "an amendment to the Guidelines Manual that has not been made retroactive" from qualifying as an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13(b)(6); *see* 88 Fed. Reg. at 28,259. The Commission accordingly precluded courts from using compassionate release as an end-run around the Commission's own determinations concerning the retroactive application of its Guidelines amendments. But by permitting other changes in law, including a statutory change that *Congress* explicitly declined to make retroactive, to qualify, the Commission declined to afford the same respect to Congress's retroactivity determinations. That counterintuitive result cannot be squared with the Commission's statutory authority. *See, e.g.*, *LaBonte*, 520 U.S. at 757 (the Commission "must bow to the specific directives of Congress").

F.  **Regardless, under the circumstances of this case, the defendant cannot establish that changes in law produce a grossly disparate sentence**

Even if subsection (b)(6) represented a valid exercise of the Commission's delegated authority, the defendant cannot establish extraordinary or compelling reasons for a sentence reduction under that provision. In short, as this Court held earlier, the defendant cannot establish that a disparity exists given that a sentence reduction is unwarranted under the 18 U.S.C. § 3553 factors.[4]

---

[4]    District courts may not reduce a sentence under § 3582(c)(1)(A) unless a reduction would be consistent with § 1B1.13. *See United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) ("[W]e hold that [§] 1B1.13 is an applicable policy statement that governs all motions under Section 3582(c)(1)(A). Accordingly, district courts may not reduce a sentence under § 3582(c)(1)(A) unless a reduction would be consistent with [§] 1B1.13."); *see also United States v. Saldana,* 2022 WL 17819520 (11th Cir. Dec. 20, 2022). Moreover, the Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13. Here, defendant fails to meet his burden for compassionate release. Rehabilitation and the other arguments he presents do not qualify for extraordinary and compelling relief that the Court can consider. *See Bryant,* 996 F.3d at 1262.

### G. "COVID-19" Claim

The defendant cites medical conditions in the context of COVID-19 and inadequate care by the BOP. (DE 501:8). Defendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release.

The state of the pandemic was radically different than it was just last year. In fact, in May 2023, the World Health Organization declared the "emergency phase" of the pandemic "over." WHO downgrades COVID pandemic, says it's no longer emergency, AP News, https://apnews.com/article/who-declares-covid-emergency-over-pandemic-8b6445735df5218b5d9d6ec32fa047ca. And on May 11, 2023, the federal COVID-19 Public Health Emergency declaration ended. End of Public Health Emergency, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html. So, while COVID-19 remains a dangerous illness, it no longer poses the same threat it did so before.

### H. The § 3553(a) factors weigh against granting the defendant early release

The defendant's request for a sentence reduction should alternatively be denied because he has failed to demonstrate that he is not a danger to the safety of the community, or otherwise merits release under the § 3553(a) factors. *See* § 3582(c)(1)(A). Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). The defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (in the context of a motion to reduce under § 3582(c)(2)); *United States v. Lonergan*, No. 19-60131-CR, 2022 WL 426487 at *5 (S.D. Fla. Feb. 11, 2022).

The offense conduct in this case was serious and the defendant was sentenced as a career offender for a reason. The nature and circumstances of the offense and the need for the sentence

to reflect the seriousness of the offense and promote respect for the law are the § 3553(a) factors most relevant to this case, and do not support a sentence reduction. Moreover, although the defendant states in his motion that he pled guilty and accepted responsibility [DE 501:14], the reverse is true, and the Government submits that the defendant also provided false testimony during his trial when he testified that he never saw the firearms seized in the investigation and he merely went to the meeting and listened to what was going on.

## CONCLUSION

Based on the foregoing, the defendant should not be granted relief.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: /s/ James M. Ustynoski
James M. Ustynoski
Assistant United States Attorney
Bar No. A5502615
500 East Broward Blvd.
Fort Lauderdale, FL. 333394
Tel: (954) 660-5697

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 1, 2024, I electronically filed the foregoing document and its attachments with the Clerk of the Court using CM/ECF and mailed the documents by United States Mail to *pro se* movant Joniel Polynice, Reg. No.: 57112-004, Federal Correctional Complex, Coleman-Medium, P.O. Box 1032, Coleman, Florida 33521.

*s/ James M. Ustynoski*
JAMES M. USTYNOSKI
Assistant United States Attorney